## Appeal of George H. Sheble et al.

An auditor's finding upon a pure question of fact, when the court is not satisfied that a mistake has been committed, must be confirmed.

An assignment by a solvent assignor of a portion of his property to pay certain specified debts is not void as to his other creditors; and the latter cannot participate in the distribution of the fund.

(Decided October 4, 1886.)

Appeal from a decree of the Common Pleas of Luzerne County overruling exceptions to the report of an auditor distributing moneys in the hands of a trustee for creditors. Affirmed.

The questions in this case arise out of the facts stated in the case of Shebel v. Bryden, 114 Pa. 147, 4 Cent. Rep. 664, 6 Atl. 905.

Bryden stated an account as trustee, which was excepted to by appellants and referred, by agreement of counsel, to William S. McLean, as auditor, to pass upon the exceptions and report distributions. The exceptions were practically abandoned and the contest before the auditor was on the question of distribution: whether it should be confined to the bondholders for whom the

NOTE.—For the power to prefer creditors see notes to Nusbaum v. Louchheim Brosheim Bros. 1 Sad. Rep. 106, and Covanovan's Appeal, 2 Sad. Rep. 79.

assignment was intended, or should embrace as well the other
creditors of the company.

The appellants claimed, with other creditors, that the knitting
company was insolvent at the time of making the assignment,
and made it to prefer creditors, and on account of inability to
pay its debts, and that the assignment consequently inured to
the benefit of all creditors of the company, under the act of
April 17, 1843 (P. L. 273).

The bondholders contended that the insurance money should
be distributed *pro rata* only to them, for the reason that when
the assignment was made the knitting company was able to pay
its debts.

The auditor reported, *inter alia,* as follows:

"A great deal of evidence was adduced by the creditors other
than the bondholders, going to show that when the assignment
was made the company was insolvent. A great mass of testi-
mony was also adduced by the bondholders going to show that
when the assignment was made the company was solvent. The
witnesses to insolvency were highly respectable and disinter-
ested in the question at issue. The witnesses to solvency were
equally respectable, but mainly interested in the question at is-
sue.

We have carefully and conscientiously considered and an-
alyzed the testimony upon one side and the other. We have also
carefully gone over the briefs of the learned counsel on the one
side and the other on this point. We are convinced that all of
the witnesses are equally honest in their opinions of value; and
the result of our examination is that the weight of the testimony
established the fact that, at the time of the assignment in ques-
tion, the company was solvent; or in other words, that at that
time, its assets exceeded in amount its liabilities. In coming to
this conclusion we have not forgotten the interest of some of the
witnesses to solvency in the question at issue, and we are mind-
ful that that interest may affect the judgment; but we are also
convinced that it does not necessarily.

"The witnesses in support of solvency, as a rule, seemed more
familiar with the premises in controversy and the property on

them than the witnesses in support of insolvency. The average estimate of value of all the witnesses called clearly established the solvency of the company at the time of the assignment; so does the average estimate of the exceptant's witnesses. A tabulated statement of these averages was prepared for us by the counsel for the trustee. We have examined it carefully, found it correct, and have adopted it as a part of our report, not as establishing in itself the main. question, but simply to present one feature of it. We are convinced of the fact of solvency from the weight of the testimony alone, and not from any rule of average.

"We, therefore, specifically find as facts:

"First, that the Pittston Knitting Company, Limited, made an assignment to Andrew Bryden, of the insurance money belonging to it in trust for the bondholders aforesaid, some of the creditors only of the company.

"Second, that it then was of ability to pay its debts; and

"Third, that this assignment was made to prefer these bondholders.

"We also find, as a conclusion of law, that the money so assigned belongs to these bondholders; and after deducting reasonable expenses, it should be distributed to them, in proportion to their respective demands. "

"We will now proceed to dispose of the exceptions, which are four in number:

"The second exception charges that the claim of the trustee for services is excessive. The claim is $531. There was no testimony taken to support the exception; hence it must be disposed of on what appears in the account. At common law, the rule is "that a trustee, executor, or administrator shall have no allowance for his care and trouble. 2 Lead. Cas. in Eq. pt. 1, p. 503.

"This rule does not prevail in Pennsylvania. *Re* Swartswalter's Account, 4 Watts, 79; Rawle, Note, 2 Lead. Cas. in Eq. pt. 1, p. 317.

"And the general practice in this state is to allow compensation to trustees by commission; 5 per cent is the usual allowance. The accountant in this case has charged 5 per cent on the money for distribution. We think we are justified in enforcing the

rule laid down by Judge RHONE in Watson's Estate, 6 Luzerne Legal Reg. 13, which reads as follows:

"When over 5 per cent is charged for services of an administrator, and is excepted to, the burden of proof is on him to show that his services are worth more than that sum; and when the parties interested desire to have the charges reduced below 5 per cent, the burden of proof is on them to show that it is worth less. The second exception is, therefore, discharged.

"The first exception charges that the counsel fee is excessive. The counsel fee, together with the expenses incurred in defending the fund for distribution, amounts to $550. Since the trustee is entitled to an allowance of reasonable counsel fees, and other expenses necessary for his guidance, and incurred in protecting the trust fund, we cannot see how, in the absence of any evidence in support of the exception, we can sustain it. There seems from examination of the account to have been a contest over the ownership of the insurance money between certain creditors of the knitting company and the trustee. Taking into consideration this contest, the amount of money involved, and the absence of any testimony going to show that the charges in question are excessive, we are inclined to hold that they are reasonable; and, therefore, we overrule the first exception.

"The third exception complains that the accountant has not charged himself with interest on the money for distribution. There is no evidence that he received any; he never actually had the moneys in his possession. They were paid into court by the insurance companies. The trustee was not to collect and invest the trust funds; his duty was simply to collect and pay them over to the parties entitled to them. Not being obliged to invest or able to invest, it clearly became the duty of the exceptant to support his exceptions by affirmative testimony. This was not done; and, therefore, we are obliged to overrule the third exception.

"The fourth exception is general and we find nothing in the testimony requiring us to consider it; and, therefore, it is dismissed.

"Counsel for exceptant have in writing requested us to find certain facts and conclusions of law, which we have appended to the report and which we will now proceed to answer.

"We find substantially the first fact as requested. The request states the indebtedness of the Pittston Knitting Company, Limited, at the date of the assignment, December 1, 1882, at over $25,400. We find as a matter of fact that the indebtedness was about $25,150; this amount was past due when the assignment was made, except $4,000.

"We find the second fact substantially as requested. The request states the assets of the Pittson Knittng Company, Limited, on the first of December, 1882, to consist of claims for insurance money, amounting to $15,168.92, and the factory lot. We find as matter of fact that the assets consisted of the $15,168.92 of insurance money, the factory lot, and the improvements not destroyed by the fire, together with the engine and machinery upon it, and that the insurance money was not payable until sixty days from the proof of loss.

"The first conclusion of law which we are requested to find, we refuse. The request is in the following words: '1. The value of the factory lot is immaterial in this case; and from the undisputed testimony in this case, the assignment to Andrew Bryden comes under the provision of the act of April 17, 1843, and inures to the benefit of all the creditors.' We are of opinion that the value of the factory lot is material, in order to determine the question whether the knitting company at the time of the assignment was of sufficient ability to pay its debts. The value of this lot must necessarily be considered.

"The second conclusion of law which we are requested to find is in the following language: 'If the assets of the Pittston Knitting Company exceeded their liabilities at the time of the assignment, yet if they were not available and could not be readily converted into cash, then the assignment comes within the provisions of the act of April 17, 1843, and inures to the benefit of all the creditors.' This request embodies matter of fact rather than of law. The question of the availability of assets, and their ready conversion into cash, is one of fact. If an asset is not available, it is because of the fact that it is worthless; if it cannot readily be converted into cash, it is because of the fact that it has not a ready sale in the market. For these reasons we must refuse to find the request as stated; but we do

find specially that the assets of the knitting company were available; that is, that they could be converted into cash, and that they had a market value at the time of the assignment.

"Having disposed of all the questions raised by the exceptions, the evidence and the requests, we will first distribute to the costs of the audit, and the balance of the trust moneys we will distribute to the bondholders, the *cestuis que trust, pro rata,* according to their respective demands. The owners of the bonds appear in a list appended to this report, which was conceded by all parties to be correct.

"The fund for distribution as per the account filed is $9,487.27

From which deduct:

| | | |
|---|---|---|
| Paid prothonotary filing acct........... | $2 | 50 |
| Recording this report.................. | 5 | 57 |
| Advertising audit .................... | 6 | 00 |
| Auditor's fee . . .................... | 100 | 00—114 07 |

Balance to be distributed to bondholders........ $9,373 20

"The bondholders are entitled to 78.11 cents on the dollar on the face of the bonds."

### Supplement to foregoing report:

"In the oral argument, after the taking of the testimony, we were asked by Mr. Sturgis, of counsel for exceptant, to strike out the testimony of all the witnesses, called to support the solvency of the 'Knitting Company, Limited,' who were bondholders, for the reason that, being experts and interested, their testimony was not admissible. We forgot to pass upon this request, in writing up our report, but will proceed to do so now.

"We refuse to strike out the testimony of these witnesses. The act of 1869 makes them competent. It makes no distinction between an expert and an ordinary witness.

"Besides, if it were the law that an expert, interested in the issue, is still incompetent as a witness, the testimony in question could not be stricken out, because the witnesses who gave it simply testified as to the value of certain real estate, or, in other words, knowing the real estate, gave their opinions as to its value. They were not called as experts, but as ordinary wit-

nesses, having a knowledge of the land in question. The market value of land is not such a question of science and skill upon which only an expert can give an opinion. Pennsylvania & N. Y. R. & Canal Co. v. Bunnell, 81 Pa. 414; 1 Greenl. Ev. § 440a; Rogers, Expert Testimony, § 162."

The appellants excepted to the report of the auditor, and on the argument on such exceptions before the court below, the following opinion was delivered by RICE, P. J.:

"Four things are essential to entitle the exceptants to participate in this distribution: 1, inability of the assignors to pay their debts; 2, an assignment on that account; 3, in trust; 4, to prefer one or more creditors. The fourth essential has been correctly found by the auditor, and the third appears on the face of the assignment; but the first two the learned auditor negatives.

"It is unnecessary to attempt any general definition of the term "insolvency," which will apply to all cases. It is enough to ascertain its meaning in an assignment of this kind; and I think the following definition is correct and applicable: Insolvency, then, is the inadequacy of a debtor's means, that is, of his whole means or resources (including not only money or its equivalent, but property in its most extensive sense), for the payment of his debts. Debts are paid with property; and so long as a debtor is in possession of means of any kind with which or out of which he can himself at once discharge all his liabilities in full, or out of which his creditors can collect all their debts by legal process, he cannot be considered insolvent. Burrill, Assignm. 78 et seq.; Herrick v. Borst, 4 Hill, 652.

"Now it appears that on November 30, 1882, a large portion of the property of the Pittston Knitting Company, Limited, was destroyed by fire. On the following day the company assigned the policies of insurance, and the money to become due on the same, to the accountant, in trust for the benefit of certain preferred creditors.

"Mr. Stinson, the managing superintendent of the company's affairs, says: 'Immediately preceding the fire the knitting company was not in a prosperous condition. They were unable to

meet their indebtedness at that time. The indebtedness past due was considerable. Notes were given prior to the fire which matured before the fire. A number of these notes were not paid; some of them were protested. Before the fire suits were brought against the company. The company had been requested to pay claims. Don't think any threats were made if they did not pay. There were one or two intimations from creditors that they would have to collect their claims.'

"On cross-examination, he says: 'We considered that the day after the fire we had more property than required to pay debts. I mean, when I say that the company at the time of the fire were not able to pay their debts, that they were not prepared át that time to do so. Most of the mortgage debt was not due.'

"The evidence also shows that about a week before the assignment, awards of arbitrators had been filed in two suits against the company, in the gross amount of $4,586.56, and that appeals have not since been taken.

"Under all these circumstances, we think it is correct to say that, if the remaining assets of the company were insufficient, upon an immediate liquidation, to pay the remaining debts of the assignors, the fact of insolvency is made out; the inference is then irresistible that the assignment was made on account of their insolvency, and, being made in trust to prefer a part of the creditors, it becomes by operation of law an assignment for the benefit of all the creditors. Act April 17, 1843 (P. L. 273).

"If such circumstances (the fact of insolvency being for the moment assumed) do not establish the second essential stated at the outset, it is difficult to see how the fact that the assignment was made *on account* of the inability of the assignor to pay his debts could be proved in any case where he had not expressly declared his reasons in the assignment itself.

"Where an assignment is made under the circumstances disclosed by this evidence, the debtor has no right to say to his unpreferred creditors: 'If I am permitted and given time to administer my remaining assets, I can eventually pay you in full.' He must be able to say: 'My remaining assets are at once convertible into money sufficient to pay you in full.' Otherwise the purpose of the legislation against preferences would be frus-

trated, and the failing debtor would still be enabled to dictate the course his property shall take.

"In the case in hand the remaining assets of the assignors consisted principally of real estate. In determining its value the auditor had to depend upon the conflicting opinions of witnesses. In giving their opinions upon questions of value, especially of real estate, witnesses are often inclined to rely on their judgment of what it ought to bring in the market rather than on any knowledge of the actual state of the market. But opinions of what the land would be worth for manufacturing purposes, without proof that it could be sold or was in demand for such purposes; of what the witness would give for the land if he had the money to invest; of what the property would sell for if time were given for payment; of its value as an investment, without proof that money was seeking investment in that direction; opinions based on these and like conditions do not answer the question now before us.

"The question is whether the assignors were in possession of means of any kind with which, or out of which, they could themselves at once discharge all their remaining liabilities in full, or out of which their creditors could collect all their debts by legal process.

"In deciding this question favorably to the preferred creditors, we must know then: 1, that the property was available; for, owing to peculiar circumstances, the debtor's assets, though in ordinary times ample, may prove unavailable because inconvertible into money; 2, that if convertible into money, it would bring enough at an immediate cash sale by the assignors, or at a forced sale at the instance of the creditors, to pay the assignors' debts in full.

"If these are the facts in this case, then the learned auditor's general conclusion that the assignors were able to pay their debts is correct, and his report of distribution proper; but a finding that they were able to pay their debts, based upon any other theory of the value of their remaining assets, would be incorrect.

"For the purposes of this case, the property was worth just what it would bring if immediately converted into money, and no more. The learned auditor's conclusion is 'that the weight

of the testimony establishes the fact that, at the time of the assignment in question, the company was solvent; or, in other words, that at that time its assets exceeded in amount its liabilities.'

"If it were not for his subsequent answer to the exceptant's second legal point, we might have no cause to doubt that this finding necessarily implies all that we have suggested as to the meaning of the term 'inability to pay debts,' in the act of 1843. But in the point referred to the learned auditor was requested to find as follows:

" 'If the assets of the Pittston Knitting Company exceeded their liabilities at the time of the assignment, yet if they were not available and could not readily be converted into cash, then the assignment comes within the provisions of the act of April 17, 1843, and inures to the benefit of all the creditors.'

"The learned auditor refused to find as requested, and perhaps, upon a critical analysis of the point, he was justified in so doing. But, nevertheless, the point would seem to have been intended to obtain a specific ruling to the effect that in deciding the main question of the assignor's ability to pay their debts, it was the adequacy and availability of their property for that purpose at the time of the assignment, by reason of its ready convertibility into money, by the voluntary act of the assignors, or by process of law at the instance of the creditors, which was to control. Thus understood, it will be seen, from what we have heretofore said, that a correct legal principle applicable to assignments of this nature was involved in the point.

"The questions constantly recur: Was the property of the assignors of such nature and value that they could themselves have disposed of it at once for enough to pay all their debts, or that the creditors could at that time have collected their debts out of it by legal process? If, in this sense, their assets exceeded their liabilities, they were unquestionably solvent. These, as we think, are the vital questions of fact in the case. From their decision is to be deduced the main conclusion as to the ability or inability of the assignors to pay their debts.

"The learned auditor has evidently considered the case with great care, and his findings upon the general question are stated

unequivocally. They will not be disturbed except for very clear mistake. But it is because of this degree of conclusiveness which attaches to an auditor's findings as to matters of fact, and because his remarks in answer to the exceptant's second legal point (by reason of what is omitted more than by what is said) have created some uncertainty in our mind as to the basis upon which his conclusion as to the value of the assignors' assets is rested, and not because we are prepared to declare his general conclusion unwarranted by the evidence, that we feel constrained to refer the matter back to him for a specific finding in the particular mentioned.

"We adopt his reasons for overruling the exceptions to the account.

"And now, January, 1885, the report is recommitted to the auditor, with the request that he report specifically upon the questions suggested in the foregoing opinions."

The second report of the auditor was as follows:

"To the Honorable the Judges of the Court of Common Pleas in and for the County of Luzerne:

"In pursuance of the request of Your Honors, contained in opinion by Rice, P. J., filed January 13, 1885, the undersigned the auditor appointed in above case to pass upon the exceptions filed to the account of A. Bryden, trustee of the Pittston Knitting Company, Limited, and report distribution of the moneys in hands of said trustee, would respectfully report:

"That a day was fixed by the auditor, to further hear the parties for and against said exceptions, more particularly upon the question of the ability of the knitting company aforesaid to pay its debts at the time of its assignment to Bryden. The parties met the auditor on the day fixed by their counsel, when the arguments were heard. And the testimony has been fully considered, as well as the arguments by the auditor, and we have to report that upon the question of the ability of the Pittston Knitting Company to pay its debts at the time of the assignment, we are of the same opinion as we were when the auditor's report was prepared. We, therefore, in accordance with the request of the court and after a careful and full con-

sideration of the testimony, find specifically the following fact:

"That when the Pittston Knitting Company, Limited, made its assignment to A. Bryden, in trust for certain of its creditors in said assignment referred to, it had assets sufficient to have at once paid all its debts, and that these assets at the time of said assignment would have sold for cash for a sum sufficient to have paid all its liabilities in full."

On argument of the exceptions filed to the second report of the auditor, the court delivered the following opinion:

"In his original report the auditor found that the assignment of the insurance moneys to the accountant, in trust for certain of the creditors of the assignors (the Pittston Knitting Company), was not on account of its inability at that time to pay its debts. His supplemental report has removed all doubt as to the basis upon which the main conclusion was rested. He now reports specifically that at the time of the assignment the Knitting Company 'had assets sufficient to have at once paid all its debts, and that these assets at the time of said assignment would have sold for cash for a sum sufficient to have paid all its liabilities in full.'

"This finding fully meets the requirements stated in our previous opinion (see Re Bryden, 42 Phila. Leg. Int. 80), and if it is warranted by the evidence, then the assignment to the accountant cannot be held to inure to the benefit of all the creditors, and the distribution reported by the auditor must be confirmed.

"The very earnest and able argument of the counsel for the exceptants has caused us to re-examine the evidence with great care. The testimony upon this question of fact is conflicting, and it must be confessed that the opinions expressed by some of the witnesses as to the value of the assets are not entitled to much weight, for the reason that they are speculative and involve the existence of conditions which do not appear in the facts. This remark, however, does not apply to the testimony of all the witnesses produced by the bondholders; and we are unable to declare that the auditor is clearly mistaken in his find ing, much less to declare that there is no evidence whatever to

sustain it. It is unnecessary to cite authorities as to the weight which must be given to an auditor's finding upon a pure question of facts. According to the familiar rule upon the subject, the court not being satisfied that a mistake has been committed, this report must be confirmed."

A decree having been made and entered overruling the exceptions to the reports of the auditor and confirming said reports, the appellants took this appeal, making the following specification of errors in the decree of the court below:

1. Overruling the first exception to the first report of the auditor, to wit: That the learned auditor erred in failing to report that the said the Pittston Knitting Company, Limited, was insolvent at the time of making the assignment of December 1, 1882, though the uncontradicted testimony of the manager established that the company was then unable to pay its debts as they fell due in the ordinary course of trade and business.

2. Overruling the second exception to the first report of the auditor, to wit: that the learned auditor erred in failing to report the placing of a portion of the company's assets in the hands of a trustee, for certain of its creditors, was a preference within the scope of the act of 1843.

3. Overruling the third exception to the first report of the auditor, to wit: that the learned auditor erred in reporting that the bondholders of the knitting company alone should participate in the distribution of the fund accounted for.

4. Overruling the fourth exception to the first report of the auditor, to wit: that the learned auditor erred in reporting as a fact that the knitting company was solvent because its assets exceeded in amount its liabilities.

5. Overruling the fifth exception to the first report of the auditor, to wit: that the learned auditor erred in reporting as a fact that the value of the assets of the company, limited, exceeded its liabilities, because the weight of expert testimony of the value of its real estate was the only foundation for so finding.

6. Overruling the sixth exception to the first report of the auditor, to wit: that the learned auditor should have found the value of the real estate of the company, limited, at the sum which it would have brought at a forced sale at the time of the assignment.

7. Overruling the seventh exception to the first report of the auditor, to wit: that the learned auditor erred in reporting that the company, limited, was of ability to pay its debts at the time of the assignment of December 1, 1882.

8. Overruling the eighth exception to the first report of the auditor, to wit: that the learned auditor erred in dismissing the first exception filed to the said account of Andrew Bryden. This first exception to the account being that "The accountant's claim of $550 for legal services is excessive."

9. Overruling the ninth exception to the first report of the auditor, to wit: that the learned auditor erred in dismissing the second exception filed to the account of Andrew Bryden. This second exception to the account being, that "Claim for $431, commission, is excessive."

10. Overruling the tenth exception to the first report of the auditor, to wit: that the learned auditor erred in refusing to find the first conclusion of law as requested by the present exceptants. This first conclusion of law being that "The value of the factory lot is immaterial in this case; the assignment to Andrew Bryden comes within the provisions of the act of April 17, 1843, and inures to the benefit of all creditors."

11. Overruling the eleventh exception to the first report of the auditor, to wit: that the learned auditor erred in refusing to find the second conclusion of law as requested by the present exceptants. This second conclusion of law being that "If the assets of the Pittston Knitting Company exceeded its liabilities at the time of the assignment, yet if they were not available and could not be readily converted into cash, then the assignment comes within the provisions of the act of April 17, 1843, and inures to the benefit of all creditors."

12. Overruling the twelfth exception to the first report of the auditor, to wit: That the learned auditor erred in failing to report that the embarrassments of the company, limited, its unpaid bills, the four suits against it, and its partial assignment of its only cash assets to a trustee just prior to the issuing of executions against it, were the natural succession of events in the history of a case of inability to pay debts within the meaning of the act of 1843.

13. Overruling the thirteenth exception to the first report of the auditor, to wit: that the learned auditor erred in excluding the exceptants from a *pro rata* share or dividend of the fund accounted for by the said Andrew Bryden.

14. Overruling the fourteenth exception to the first report of the auditor, to wit: that the learned auditor erred in reporting and finding the solvency of the company, limited, from the weight of testimony of the value of its lands for manufacturing purposes or investment, without regard to their value at a forced sale.

15. Overruling the fifteenth exception to the first report of the auditor, to wit: that the learned auditor erred in finding that the lands of the knitting company, limited, had a market value and were available for conversion into cash, without finding what that market value and availability for conversion into cash amounted to in dollars and cents.

16. Overruling the sixteenth exception to the first report of the auditor, to wit: that the learned auditor erred in disregarding the testimony of the company's manager, that at the time of the assignment to Bryden in trust, the company was unable to meet its indebtedness.

17. Overruling the former part of the first exception to the second report of the auditor, to wit: because there is no evidence to support his (the auditor's) finding of fact, that the Pittston Knitting Company had assets sufficient at the time of the assignment to Andrew Bryden to have at once paid all its debts, and that the auditor erred in such finding.

18. Overruling the latter part of the first exception to the second report of the auditor to wit: because there is no evidence to support his (the auditor's) finding of fact that these assets

(which the company had), at the time of the assignment, would have sold for cash for a sum sufficient to have paid all its liabilities in full, and that the auditor erred in such finding.

19. Overruling the second exception to the second report of the auditor, to wit: that the auditor erred in such finding of fact (that the assets of the knitting company at the time of the assignment would have sold for cash for a sum sufficient to have paid all its liabilities in full), because it was contradictory to the only competent testimony in the case.

20. Overruling the third exception to the second report of the auditor, to wit: that the auditor erred in said finding of fact (that the assets of the knitting company at the time of the assignment would have sold for cash for a sum sufficient to have paid all its liabilities in full), because it was clearly against the weight of the evidence.

*F. C. Sturgis* and *John Bethell Uhle* for appellants.

*George S. Ferris* for appellees.

OPINION BY MR. JUSTICE STERRETT:

It would be a useless expenditure of time and labor to specially notice each of the twenty specifications of error in this case. The only result would be to make more apparent what is very evident from an examination of the evidence: that there is no special merit in any of them.

Some of the assignments of error present questions which arose and have been finally disposed of on the writ of error brought by appellants to No. 84 of this term [Shebel v. Bryden, 114 Pa. 147, 4 Cent. Rep. 664, 6 Atl. 905]. The learned auditor's findings of fact, which constitute the burden of complaint, were fully warranted by the evidence before him; and, upon the facts thus found, no other decree than that entered by the court below could have been consistently based.

Decree affirmed and appeal dismissed, at the costs of appellants.